**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MEGHANN PORCH,
an individual,

Case No.:

Plaintiff,
v.

EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,

Defendant.
_______________________________________/

**PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION**

Plaintiff, MEGHANN PORCH, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates AARON M. SWIFT, Esq. as Lead Counsel for Plaintiff.

**COMPLAINT**

**COMES NOW**, Plaintiff, MEGHANN PORCH (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendant, EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Defendant" or "Equifax"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1. This is an action brought by Plaintiff, an individual consumer, for damages for Defendant's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Defendant failed to

establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files published by Defendant with respect to public court information and with respect to tradeline accounts that were discharged through Plaintiff's bankruptcy case.

2. More specifically, Defendant inaccurately, incompletely, and misleadingly credit-reported Plaintiff's accounts without indicating or notating that such accounts were included in—and discharged through—Plaintiff's voluntary bankruptcy case.

3. Furthermore, this is an action for damages for Defendant's violations of the FCRA wherein Defendant failed to reasonably investigate disputes Defendant received from Plaintiff demanding investigations and re-investigations of the disputed tradeline accounts as required by the FCRA.

**JURISDICTION, VENUE & PARTIES**

4. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq*.

5. Defendant is subject to the jurisdiction of this Court as Defendant regularly conducts business in this District.

6. Venue is proper in this District as the acts and transactions described herein originated and occurred in this District, Plaintiff filed her bankruptcy case in this District, and Plaintiff received a discharge order through her bankruptcy case in this District.

7. At all material times herein, Plaintiff is a natural person residing in

Orange County, Florida.

8. At all material times herein, Defendant is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

## FCRA STATUTORY STRUCTURE

9. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

10. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § 1681e(b) (emphasis added).

11. Further, under the FCRA, whenever a consumer reporting agency receives a dispute from a consumer, the consumer reporting agency is required to provide written notice to the consumer including the results of a reinvestigation not later than five (5) business days after the completion of the reinvestigation. *Id.* at § 1681i(a)(6).

12. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the

consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

13. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

14. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

15. At all material times herein, Defendant credit reports information concerning consumer credit accounts furnished by the following entities and corresponding accounts (hereinafter collectively, the "Accounts"):

- Prosper/Coastal Community Bank Acct. No. Ending -4419;
- Fairwinds Credit Union Acct. No. Ending -7693;
- Bloomingdales Acct. No. Ending -3970;
- CFNA/Bridgestone Retail Acct. No. Ending -7509
- Citicards/Citibank/CBNA Acct. No. Ending -9281
- Capital One Acct. No. Ending –4363

- Capital One Acct. No. Ending –8816
- Capital One Acct. No. Ending –4027
- Capital One Acct. No. Ending –2487
- Capital One Acct. No. Ending –4990
- Avant/WebBank Acct. No. Ending -8522; and
- TD Bank/Target Acct. No. Ending -6026

(hereinafter collectively, the "Accounts").

16. At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax then disburses such consumer reports to third parties under contract for monetary compensation.

17. At all material times herein, Defendant acted itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

18. All necessary conditions precedent to the filing of this action occurred, or Defendant waived or excused the same.

## **FACTUAL ALLEGATIONS**

## **PLAINTIFF'S BANKRUPTCY CASE AND DISCHARGE ORDER**

19. On or about August 25, 2025, Plaintiff filed a voluntary Chapter 7

bankruptcy case in the Middle District of Florida, identified by case number 6:25-bk-05361-LVV (hereinafter, "Bankruptcy Case").

20. Plaintiff listed each of the Accounts in her Bankruptcy Case schedules as unsecured or secured debts owed to Plaintiff's creditors.

21. Plaintiff reaffirmed an account originally owed to MidFlorida Credit Union but did not reaffirm any of the above-listed Accounts through her Bankruptcy Case.

22. As such, each of the Accounts were scheduled to be discharged through Plaintiff's Bankruptcy Case.

23. On or about December 16, 2025, the United States Bankruptcy Court entered an *Order of Discharge* (hereinafter, "Discharge Order") in Plaintiff's Bankruptcy Case.

24. As such, as of December 16, 2025, Plaintiff no longer owed a balance on the Accounts as the Discharge Order extinguished and eliminated Plaintiff's personal financial obligation with respect to the Accounts.

**Equifax's Credit Reporting of the Accounts and Plaintiff's Disputes**

25. In March 2026, Plaintiff obtained copies of her credit disclosure reports from Equifax, Experian, and Trans Union.

26. Notably, Experian and Trans Union were each reporting Plaintiff's Bankruptcy case in the public records section of such credit reports and marked each of Plaintiff's Bankruptcy Accounts as included in and discharged through the Bankruptcy case, including the Accounts mentioned above.

27. Despite the Accounts being included in Plaintiff's Bankruptcy Case and such Accounts being discharged, and despite Experian and Trans Union maintaining accurate credit reports following the Bankruptcy Case Discharge Order, Equifax failed to report Plaintiff's Bankruptcy Case in the public records section of her Equifax credit reports and credit files as of March 2026.

28. Additionally, Equifax failed to report the above-referenced Accounts as included in and discharged through Plaintiff's Bankruptcy Case and instead reported the Accounts with a status of "UNAVAILABLE" or a status of "CHARGE OFF."

29. On or about March 25, 2026, Plaintiff sent a letter to Equifax—with the assistance of her attorneys—wherein Plaintiff advised that the above referenced Accounts were each discharged through Plaintiff's Bankruptcy Case, yet Equifax failed to report Plaintiff's Bankruptcy Case and also failed to report the Accounts as included in and discharge through Plaintiff's Bankruptcy Case (hereinafter, Plaintiff's "First Dispute").

30. Plaintiff's First Dispute also advised Equifax that it was reporting a balance owed on the Prosper/Coastal Community Bank account when such account balance was legally discharged.

31. Plaintiff's First Dispute included sufficient information to allow Equifax to identify Plaintiff's credit file, specifically, Plaintiff's full name, current address, date of birth, and the last four (4) digits of his Social Security number.

32. Equifax received Plaintiff's First Dispute.

33. On or about April 21, 2026, Equifax sent a letter to Plaintiff with

purported dispute results.

34. Despite Plaintiff's First Dispute clearly identifying the Accounts that should be reported as discharged with no balance owed, Equifax's dispute results *still* reflected a past-due balance owed on the Proper/Coastal Community Bank account and *still* failed to report the Accounts as included in Plaintiff's Bankruptcy Case.

35. Further, Equifax's response to Plaintiff's First Dispute asserted that Equifax was not currently reporting Plaintiff's Bankruptcy Case.

36. May 20, 2026, Plaintiff sent *another* letter to Equifax—*again* with the assistance of her attorneys—wherein Plaintiff *again* instructed Equifax to update its reporting of the Accounts to show each as included in and discharged through Plaintiff's Bankruptcy Case, requested that Equifax report Plaintiff's Bankruptcy Case information in the public records section of his Equifax credit file and reports, requested that Equifax update its reporting of the Prosper/Coastal Community Bank account to reflect a zero-dollar balance due, and advised Equifax that is was reporting Plaintiff's former legal last name, Rodriguez, rather than her current legal last name, Porch (hereinafter, Plaintiff's "Second Dispute").

37. In the Second Dispute, Plaintiff enclosed copies of relevant pages from her Bankruptcy Case schedules showing the Accounts and a copy of the Discharge Order entered in Plaintiff's Bankruptcy Case.

38. Equifax received Plaintiff's Second Dispute and all enclosures.

39. On or about May 30, 2026, Plaintiff received a letter from Equifax with results from Plaintiff's Second Dispute.

40. More specifically, although Equifax's dispute results acknowledge that Plaintiff's Second Dispute "indicated that this account was included in your bankruptcy" and assert that Equifax made updates to the Accounts, Equifax *still* failed to include any bankruptcy notation on each of the Accounts, *still* reported a past-due balance on the Prosper/Coastal Community Bank account, and *still* failed to report Plaintiff's Bankruptcy Case in the public records section of her Equifax reports.

41. On or about July 8, 2026, Plaintiff sent *another* letter to Equifax—*again* with the assistance of her attorneys—wherein Plaintiff *again* instructed Equifax to update its reporting of the Accounts to show each as included in and discharged through Plaintiff's Bankruptcy Case, requested that Equifax report Plaintiff's Bankruptcy Case information in the public records section of his Equifax credit file and reports, requested that Equifax update its reporting of the Prosper/Coastal Community Bank account to reflect a zero-dollar balance due (hereinafter, Plaintiff's "Third Dispute").

42. In the Third Dispute, Plaintiff enclosed copies of relevant pages from her Bankruptcy Case schedules showing the Accounts and a copy of the Discharge Order entered in Plaintiff's Bankruptcy Case.

43. Equifax received Plaintiff's Third Dispute including all enclosures.

44. However, Plaintiff did not receive dispute results from Equifax regarding her Third Dispute.

45. Equifax did not send Plaintiff results of Equifax's reinvestigation following Plaintiff's Third Dispute.

46. On or about August 31, 2026, Plaintiff obtained a copy of her Equifax report to review any changes made by Equifax following Plaintiff's Third Dispute.

47. Although Equifax failed to notify Plaintiff, Equifax updated its reporting no later than August 31, 2026 to finally report Plaintiff's Bankruptcy Case in the public records section of her reports and updated at least two (2) of the Accounts to show as included in Plaintiff's Bankruptcy Case.

48. However, Equifax *still* failed to mark *at least* eight (8) accounts as included in Plaintiff's Bankruptcy Case following Plaintiff's Third Dispute.

49. After the date the Discharge Order was entered in Plaintiff's Bankruptcy Case, but before Equifax updated its reporting of the Accounts, Equifax prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the Accounts with derogatory information while failing to mark the Accounts as included in and discharged through Plaintiff's Bankruptcy Case.

## **DAMAGES**

50. As a result of Defendant's unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Accounts, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

51. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendant's conduct, Defendant defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendant unfairly discriminated against Plaintiff

by ignoring—or failing to reasonably review—Plaintiff's Accounts following the Discharge Order entered in his Bankruptcy Case, and Plaintiff did not receive the benefit of a fresh start following the conclusion of her Bankruptcy Case.

52. Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

53. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

54. As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she did not wish to further damage his credit score with futile credit inquiries, and she was continually evaluated for credit using consumer reports that reported the Accounts as derogatory without indicating that such Accounts were discharged through bankruptcy.

55. Additionally, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite receiving a discharge order in her Bankruptcy Case which legally discharged any balance owed on the Accounts, Plaintiff must simply endure Defendant's erroneous, incomplete, and/or misleading reporting of the Accounts.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

56. Equifax is subject to, and has violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

57. Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the discharged Accounts.

58. Despite Plaintiff receiving a discharge order in her Bankruptcy Case no later than December 2025—which legally eliminated Plaintiff's personal liability with respect to all of the above Accounts—Equifax subsequently reported the Accounts and failed to mark or otherwise indicate that the Accounts were included in and discharged through Plaintiff's Bankruptcy Case.

59. Further, Equifax wholly failed to report Plaintiff's Bankruptcy Case in the public records section of her Equifax reports.

60. Equifax's reporting of the Accounts with the status "Charged-off" or "unavailable" or reporting the Accounts with past due balances is false and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

61. Equifax's false and erroneous reporting relating to Plaintiff's Bankruptcy Case and Accounts *continued* after Plaintiff repeatedly notified Equifax of its reporting errors.

62. Between December 2025 and August 2026, Equifax generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

63. Overall, Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files following the conclusion of Plaintiff's Bankruptcy Case.

64. As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed he did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Accounts with an erroneous balance owed and incompletely reported the legal status of the Accounts.

65. Defendant's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

66. Defendant's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys'

fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

67. Defendant is subject to, and violated the provisions of, 15 United States Code, Sections: 1681i(a)(1) by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; Section 1681i(a)(2) by failing to promptly notify furnishers of each of Plaintiff's disputes; Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; Section 1681i(a)(5) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and Section 1681i(a)(6) by failing to provide Plaintiff with written notice of Defendant's re-investigation results following each of Plaintiff's disputes.

68. Specifically, Defendant willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's First Dispute and Second as described herein.

69. Following Plaintiff's First Dispute and Second Dispute, Defendant *still*

failed to report Plaintiff's Bankruptcy Case in the public records section of Plaintiff's Equifax reports and continued reporting the Accounts with derogatory information following Plaintiff's disputes without indicating that such Accounts were included in and discharged through Plaintiff's Bankruptcy Case.

70. Further, despite Plaintiff's First Dispute and Second Dispute, Defendant *continued* reporting Plaintiff's Prosper/Coastal Community Bank account with a balance past-due when Plaintiff owed $0 on such account as of December 2025.

71. Overall, Plaintiff's First Dispute and Second Dispute provided Defendant with sufficient information allowing Defendant to identify its reporting errors with respect to the Accounts and public record information related to Plaintiff's Bankruptcy Case, and therefore, to correct the inaccurate reporting.

72. Defendant did not request any documents supporting any information furnished by any of Plaintiff's creditors regarding Plaintiff and the Accounts in response to Plaintiff's repeated disputes.

73. Defendant did not independently access or obtain any public records regarding Plaintiff's Bankruptcy Case other than those provided by Plaintiff with her repeated disputes.

74. Defendant did not send Plaintiff any dispute reinvestigation results regarding Plaintiff's Third Dispute.

75. As such, Defendant failed to provide Plaintiff with written notice of Defendant's investigations and/or re-investigation results following each of Plaintiff's disputes.

76. To the extent Defendant conducted any re-investigations in response to Plaintiff's repeated disputes, Defendant's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Accounts was accurate and Defendant failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

77. Such reporting is false and evidences Defendant's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

78. Moreover, Experian and Trans Union accurately reported Plaintiff's Bankruptcy Case and did not report Plaintiff's Bankruptcy Case Accounts in error.

79. Defendant's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

80. Defendant's reinvestigations were *per se* deficient by reason of these failures in Defendant's reinvestigations of Plaintiff's disputes and the Accounts.

81. As a result of Defendant's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Accounts, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Accounts as derogatory without notating such Accounts as discharged.

82. Defendant's actions were a direct and proximate cause of, as well as a

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

83. Defendant's actions in violation of 15 United States Code, Section 1681i, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a. Judgment against Defendant for maximum statutory damages for violations of the FCRA;

b. Actual damages in an amount to be determined at trial;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. An award of attorneys' fees and costs; and

f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*